E-FILED
Wednesday, 29 May, 2019 03:15:23 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cr-20061 |
| | ) | |
| FINAS J. GLENN, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION

This Motion comes before the Court on Defendant's Motion to Suppress Statements (Doc. 12) and Motion to Quash Search Warrant and Suppress Evidence (Doc. 15). The United States filed a Response (Doc. 18), and a hearing was held on April 22, 2019. Defendant filed a post-hearing Memorandum in Support (Doc. 21), and the United States filed a post-hearing Brief (Doc. 22). Argument was heard on those filings on May 13, 2019.

On September 13, 2018, agents allegedly used a Confidential Source ("CS") to purchase two ounces of cocaine from the Defendant for $2,600. The purchase was captured on audio and video recording at Defendant's residence in Danville, IL. Doc. 18, p. 2. The Defendant remained under investigation, and officers chose to further investigate the Defendant rather than arresting him that day.

On September 24, 2018, in an unrelated incident, the Defendant reported criminal damage to his vehicle. Doc. 18, p. 3. On October 10, 2018, the Defendant went to the Public Safety Building in Danville, IL to meet with Vermilion County Sheriff's Department deputies about the criminal damage to his vehicle. Doc. 12, p. 1. He was taken to an interview room to discuss the matter. A voluntary discussion lasted about 15 minutes, and then the deputy left the room.

At approximately 10:45 a.m., Vermilion County Metropolitan Enforcement Group ("VMEG") agents Alblinger and Crawley entered the room for what the Court will describe as the initial interview. At this point, the events relevant to the Motions began.

The Defendant was not restrained, the door was closed but unlocked, and he retained custody of his phone, wallet, and personal items. The agents ultimately asked the Defendant about his drug dealing, but they were also seeking assistance in investigating his cocaine supplier. At one point, while being asked about his supplier, the Defendant stood up, placed his hands behind his back, and asked the agents to "take him downstairs." This was not a custodial interrogation triggering the necessity of *Miranda* warnings. *See United States v. Patterson*, 826 F.3d 450 (7th Cir. 2016) (no custody where suspect voluntarily came to FBI office, no weapons were drawn, no restraints were used, the door was unlocked, and the suspect left after the discussion, though he was never explicitly told that he was free to leave); *see also United States v. Ambrose*, 668 F.3d 943, 958 (7th Cir. 2012) (no custody where suspect was misled into showing up at FBI office, shown inculpatory evidence, had a "businesslike" conversation in a conference room with the door ajar, and was escorted to and from the restroom by multiple FBI agents).

That same day, the agents sought a search warrant for the Defendant's residence. In Vermilion County, the common practice is for an agent to give live testimony under oath in support of a request for a search warrant. Agent Alblinger and the Vermilion County State's Attorney met with Vermilion County Associate Judge Derek Gerton to seek a search warrant for the Defendant's residence. Alblinger testified that VMEG was in an ongoing investigation and the Defendant lived at the address in question. The agent described the controlled purchase of roughly two ounces of cocaine on September 13, 2018, and indicated that the individual who

purchased the cocaine had provided verifiable information in the past and had been a confidential source for many years. Alblinger also told the judge about the conversation with the Defendant earlier that same day. The judge asked some follow-up questions and then issued the warrant.

The agents executed the search, locating cellular phones, two ounces of cocaine, two loaded firearms, ammunition, and proof of Defendant's occupancy. They returned to the Public Safety Building to again speak with the Defendant. The Defendant now seeks to quash the search warrant and suppress the evidence, as well as to suppress the statements he made in the subsequent interview.

The agents told the Defendant that the interview was being recorded and advised him of his *Miranda* rights. The Defendant acknowledged his rights, initialed the paper copy he was given showing his understanding of his rights, but refused to sign the form waiving his *Miranda* rights. The Defendant was asked if he wanted to make a statement, and he responded that he did not. The Defendant then asked if the agents had recovered his medicine. The officer said no. Defendant asked if he could see a nurse, and the officers said he could probably do that the next day. The officer then provided Defendant with an evidence inventory for the items seized that evening from his residence. The Defendant reviewed the form, then asked several unprompted questions, which Alblinger answered. The Defendant made multiple statements that prompted follow-up questions from Alblinger.

The Court will first address the initial interview. Defendant came in to the Public Safety Building to speak with law enforcement voluntarily, and he was treated the way a cooperating witness would be—he was not restrained, he was brought to an interview room, the door was unlocked, and there were no threats by law enforcement. Although Defendant was never explicitly told he could leave, these circumstances support a finding that there was no custody.

3

*See Patterson*, 826 F.3d 450. Accordingly, the Court will not suppress the statements Defendant made in the initial interview.

Second, the Court turns to the search warrant, and finds sufficient probable cause was present for the warrant to issue. *See United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006) ("Generally, a controlled buy, when executed properly, is a reliable indicator as to the presence of illegal drug activity."); *see also United States v. Haynes*, 882 F.3d 662, 666 (7th Cir. 2018) ("A properly executed controlled buy can establish probable cause, even when the tip that prompted it might not have been reliable."). The defense argues, in part, that Alblinger withheld information from the judge that would have allowed the judge to assess the reliability of the confidential source, specifically his prior record and motivation to work with VMEG. Alblinger answered that he would have advised the judge of those details if the judge had asked. The Court believes agents should advise neutral magistrates of these facts, but the circumstances here do not affect the probable cause finding.

Alblinger also told the judge that the CS had provided verifiable information for many years. This does raise an inference that the judge could believe that Alblinger himself had been communicating with the CS for many years, when in fact it was the Department, and Alblinger had never worked directly with the CS before. Again, the Court finds this omission to be problematic, and may in the future be the kind of sleight-of-hand that causes a search warrant to be quashed. However, in the circumstances here, Alblinger's testimony regarding a controlled buy, paired with statements by the Defendant in the initial interview, presented sufficient probable cause.

Finally, the Court turns to the second interview. The Defendant was unquestionably in custody at that time, and he had refused to give a statement several times. The United States

4

argues that Defendant's question about whether the officers had recovered his medicine "constituted a waiver and initiation of discussion about the search by the defendant." However, given the clear connection between the custodial relationship and Defendant's question about his medicine and request to see a nurse, this argument does not stand. *See Oregon v. Bradshaw*, 462 U.S. 1039, 1045 (1983) ("There are some inquiries, such as a request for a drink of water or a request to use a telephone that are so routine that they cannot be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation.").

The United States further contends that it was common practice for agents to provide the Defendant with an inventory list of the evidence seized during their search of his residence. The video of the interview shows the agents informing Defendant that he had no obligation to sign that form; it was merely being provided to inform him of what was taken. When the Defendant himself asked questions about the form, nothing prohibited the agents from answering his questions, such as explaining what the word "indicia" meant. Still, the Court must determine whether Defendant's statements as he looked over the inventory list were nonetheless the result of "interrogation." *See Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) ("[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."); *Ambrose*, 668 F.3d 943, 956 (7th Cir. 2012) ("[Conveying information to Ambrose] nevertheless was an 'interrogation' for *Miranda* purposes because Fitzgerald and Grant should have known that confronting Ambrose with evidence of his guilt was likely to elicit an incriminating response, and the government does not argue otherwise."))

This situation resembles that of *Ambrose*, as the officers confronted Defendant with evidence of his guilt—an action that appears reasonably likely to elicit an incriminating response. In this case, that may indeed have been the subjective intent of the officers, but the presentation of the receipt for the property seized at Defendant's residence appears to be a routine, standard action "normally attendant to arrest and custody" not subject to suppression. *See Innis*, 446 U.S. at 301. The Court therefore finds that Defendant's unprompted statements and questions as he began examining the inventory list were not the result of interrogation.

However, at the point when agents began questioning the Defendant, he had not waived his *Miranda* rights and had in fact repeatedly asserted that he did not want to answer questions or make a statement. The questions the officers asked went beyond the routine provision of an evidence receipt to the Defendant and into the realm of interrogation. Thus, the Court holds that statements Defendant made after agents began questioning him (including about which items were his) were obtained in violation of his Fifth Amendment rights and should be suppressed. For clarity, the Court finds that that point begins approximately 18 minutes and 30 seconds into the interview recording.

## CONCLUSION

For the reasons stated herein, Defendant's Motion to Suppress Statements (Doc. 12) is DENIED in part and GRANTED in part, and Defendant's Motion to Quash Search Warrant and Suppress Evidence (Doc. 15) is DENIED.

Signed on this 29th day of May, 2019,

/s James E. Shadid
James E. Shadid
United States District Judge